FILED
2021 NOV 22 AM 9:19
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DP CREATIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>REBORN BABY MART, *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO FILE UNDER SEAL, EX PARTE MOTION FOR EXPEDITED DISCOVERY AND SERVICE BY ALTERNATE MEANS, AND EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ASSET FREEZE**<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:21-cv-00574-JNP<br><br>District Judge Jill N. Parrish |

Before the court are three motions filed by Plaintiff DP Creations, LLC d/b/a Bountiful Baby ("Bountiful Baby" or "Plaintiff"): an Ex Parte Motion for Leave to File Under Seal (ECF No. 1); an Ex Parte Motion for a Temporary Restraining Order, Temporary Injunction, and Asset Freeze (ECF No. 3); and an Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 4). Having reviewed the memoranda, the court grants all three motions.

## BACKGROUND

Bountiful Baby is a Utah limited liability company with its principal place of business at 2140 South 3600 West, West Valley City, Utah. Bountiful Baby does business in the District of Utah, has numerous employees and customers in the District of Utah, and has allegedly suffered injury in the District of Utah.

This lawsuit names as defendants five unknown Chinese entities (Reborn Baby Mart, Reborn Box, Reborn Baby Stores, Love Reborn Dolls, and Reborn Dolls Shop) and four entities with various connections to the unknown Chinese entities (Nine9Light Company, LTD Information Technology Co., Ltd., Jozzby Group, Inc., and AIMARK Ltd.) (collectively, "Defendants"). The Defendants operate websites, accept PayPal payments, and correspond with customers through email.[1]

Bountiful Baby specializes in selling kits and supplies for making "reborn dolls." Reborn dolls are intended to be indistinguishable from a real baby, and Bountiful Baby's dolls are particularly known for their uncanny realism. Bountiful Baby alleges that Defendants sell counterfeit Bountiful Baby products on their websites and mislead consumers by using Bountiful Baby's copyrighted images and trademarks. Bountiful Baby alleges copyright infringement, unfair competition, and common law trademark infringement.

---

[1] Defendant Reborn Baby Mart operates www.RebornBabyMart.com, accepts PayPal payment through englandearthwards32@gmail.com, and corresponds with customers through cs@rebornbabymart.com. Defendant Reborn Box operates www.RebornBox.com and corresponds with customers through service@rebornbox.com. Defendant Reborn Baby Stores operates www.RebornBabyStores.com and corresponds with customers through service@rebornbabystores.com. Defendant Love Reborn Dolls operates www.LoveReborn Dolls.com and corresponds with customers through services@lovereborndolls.com. All four aforementioned entities accept PayPal payments at sdh15168294305@gmail.com. Defendant Reborn Dolls Shop operates www.RebornDollsShop.com, accepts PayPal payment at jonesjere1000@gmail.com, and corresponds with customers through service@reborndollsshop.com.

Plaintiff also lists four business organizations associated with the aforementioned entities. Defendant Jozzby is associated with Reborn Baby Mart and Reborn Dolls Shop, accepts PayPal payments through sdh15168294305@gmail.com, and corresponds with customers through cs@rebornbabymart.com. Defendant AIMARK is associated with Reborn Baby Stores and Love Reborn Dolls, accepts PayPal payments through sdh15168294305@gmail.com and jonesjere1000@gmail.com, and corresponds with customers through service@reborndollsshop.com and service@reborndollsshop.com. Defendant Nine9Light Company accepts PayPal payments at sdh15168294305@gmail.com for products sold by Reborn Box, Reborn Baby Mary, and Reborn Stores. Defendant LTD Information Technology Company accepts PayPal payments at jonesjere1000@gmail.com for products sold by Reborn Dolls Shop.

**PERSONAL JURISDICTION**

At the pleadings stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Bountiful Baby alleges that the court has personal jurisdiction over each defendant because they committed copyright infringement in Utah, targeted Bountiful Baby in Utah, and placed infringing products into the stream of commerce with the knowledge the products would reach Utah. To support their argument, Bountiful Baby contends that the checkout pages on Defendants' websites include dropdown menus listing Utah as a location to which product orders may be shipped or sold.

The inclusion of Utah in the dropdown lists of states "is sufficient to establish specific personal jurisdiction under the 'stream of commerce' theory and that the Defendants' site[s are] 'something more' than a non-targeted transaction site." *Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 9601834, at *1 (D. Utah May 5, 2020) (quoting *Zing Brothers, LLC v. Bevstar, LLC*, No. 2:11-cv-337, 2011 WL 4901321, at *2-3 (D. Utah Oct. 14, 2011)). Additionally, given the Defendants' minimum contacts, the court finds that the exercise of personal jurisdiction over the Defendants satisfies due process and does not offend the traditional notions of substantial justice and fair play. Accordingly, Bountiful Baby makes a sufficient showing of personal jurisdiction for this stage of the proceedings.

**ANALYSIS**

The court first addresses Plaintiff's motion for a temporary restraining order, then discusses Plaintiff's other requested relief.

I.      TEMPORARY RESTRAINING ORDER ("TRO")

   A.      *Legal Standard*

A TRO is appropriate where a plaintiff establishes the following: (1) a substantial likelihood of success on the merits of its claims against Defendants; (2) irreparable harm absent a TRO; (3) that the threatened injury outweighs any harm the TRO would cause Defendants; and (4) that the injunction will not adversely affect the public interest. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). Bountiful Baby meets each of the four TRO requirements.

   B.      *Discussion*

      i.      **Likelihood of Success on the Merits**

Bountiful Baby rests its argument for this prong on its copyright infringement claims. To succeed on a copyright infringement claim, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014). Bountiful Baby provided proof of ownership of U.S. Copyright Registration Nos. VA0002231276, VA0002255282, and VA0002255449. ECF Nos. 1-40, 1-41, 1-42. And Bountiful Baby submits photos in its complaint that allegedly show that Defendants copied original constituent elements of its copyrighted materials by using copyrighted images and selling copyrighted doll sculptures. ECF No. 1 at 11-34. Based on these allegations, the court finds that Bountiful Baby is likely to succeed on the merits of its copyright infringement claims.

In addition to copyright infringement, Bountiful Baby also sues Defendants for unfair competition and trademark infringement. Bountiful Baby only argues that it is likely to succeed

on the merits of the copyright infringement claim. But "[w]here a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims." *Roda Drilling Co. v. Siegal*, No. 07-cv-400-GFK-FHM, 2008 WL 4056229, at *5 (N.D. Okla. Aug. 11, 2008) (citation omitted); *see also Girls Clubs of Am., Inc. v. Boys Clubs of Am., Inc*, 683 F. Supp. 50, 52 (S.D.N.Y.), *aff'd,* 859 F.2d 148 (2d Cir. 1988). Because the court finds that Bountiful Baby is likely to succeed on the merits of its copyright infringement claim, Plaintiff need not also argue that it would succeed on the merits of its unfair competition and trademark infringement claims.

### ii. Immediate and Irreparable Injury

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted). The "loss of reputation, good will, marketing potential," and customers constitutes irreparable injury. *See id.* at 1156-57; *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004) ("[T]he irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."); *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F. Supp. 2d 1248, 1254 (D. Utah 2013) ("Loss of customers, loss of goodwill, and threats to a business' viability have been found to constitute irreparable harm.").

Bountiful Baby alleges that Defendants use copyrighted images identical to copyrighted images owned and used by Bountiful Baby on their websites. Bountiful Baby further contends that Defendants use their websites to sell copyrighted baby sculptures identical to the copyrighted

5

sculptures owned and sold by Bountiful Baby. Bountiful Baby claims that Defendants' use of its copyrighted images and sale of its copyrighted dolls are already causing immediate and irreparable injury to Bountiful Baby. The court agrees.

First, Bountiful Baby provides evidence of the negative reviews of Defendants' products online. ECF No. 3-1, at 5. Bountiful Baby asserts that customers who purchase products through the allegedly counterfeit websites and who do not realize the difference between authentic, copyrighted Bountiful Baby products and the counterfeit products may fault Bountiful Baby when they receive poor-quality products. Second, Bountiful Baby alleges that Defendants' continued advertising and sale of its allegedly counterfeit products will continue to cause irreparable harm to Bountiful Baby as Defendants continue to confuse and deceive consumers as to the origin and quality of the product, thus causing consumers to associate Defendants' poor-quality products with Bountiful Baby.

Therefore, the court finds that Bountiful Baby is suffering and will suffer irreparable harm in the form of a tarnished reputation, a decrease in market share and goodwill, and a loss of customers who are upset about the poor-quality product they received.

### iii. Balance of Harms

Moreover, the balance of harms tips in favor of Bountiful Baby. "[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007). Here, because Defendants' businesses allegedly sell counterfeit products using Bountiful Baby copyrighted images and product designs, the court finds that Defendants cannot avoid a TRO based on harm to its business. Thus, there is no cognizable likelihood of harm to Defendants. *See Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-521, 2008 WL 11340043, at *3

(D. Utah Aug. 15, 2008) ("Producing and selling counterfeit goods is illegal. There can be no cognizable harm to the Defendants by the issuance of an order requiring them not to break the law.").

####  iv.  Public Interest

Finally, Bountiful Baby "must also demonstrate that issuance of the preliminary injunction is not adverse to the public interest." *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 357 (10th Cir. 1986). "In copyright cases . . . this factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections." *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

Here, Bountiful Baby offered evidence of copyright infringement. Because copyright infringement inherently harms the public interest, an injunction necessarily serves the public interest.

####  v.  Ex Parte Nature of Plaintiff's Request

Bountiful Baby moves for its TRO without providing notice to Defendants. Under Federal Rule of Civil Procedure 65(b)(1), a movant may obtain an ex parte TRO only if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

While this court generally expresses skepticism of ex parte TROs, it recognizes that, occasionally, circumstances require an ex parte TRO. This case presents one such occasion.

As the Supreme Court counsels, "[e]x parte temporary restraining orders are no doubt necessary in certain circumstances [but] they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (citation omitted). Cases where notice would render further prosecution "fruitless"—such as when an alleged infringer would likely dispose of the infringing goods before the hearing—warrant ex parte relief. *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

Bountiful Baby demonstrates, as set forth in this order, that it is presently suffering from immediate and irreparable harm because of Defendants' counterfeit scheme. Bountiful Baby urges the court to proceed without notice to avoid giving Defendants an opportunity to dispose of the counterfeit products and related assets. *See Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("As recognized in *In re Vuitton et Fils S.A.*, 606 F. 2d 1, 4-5 (2d Cir. 1979), and its progeny, proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted."). And other courts have recognized the need for ex parte relief in cases involving foreign counterfeiters operating over the internet. *See, e.g.*, *Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV 14-06680-BRO(AJWx), 2014 WL 12561613, at *4 (C.D. Cal. Aug. 27, 2014) (issuing an ex parte TRO where plaintiff alleged the foreign defendant could easily hide, destroy, conceal, or transfer the counterfeit goods and records); *Yanmar Co., Ltd. v. Baoluli Happy*, No. 1:19-cv-5331-TCB, 2019 WL 8277259, at *3 (N.D. Ga. Nov. 25, 2019)

("Foreign parties that sell Counterfeit Products often 'disappear' when notified that their conduct is unlawful, only to set up a new online storefront under a new name, with new financial accounts.").

The court concurs that granting relief ex parte is appropriate where foreign counterfeiters operate over the internet, as is the case with Defendants, and finds that Bountiful Baby meets the ex parte requirements in Rule 64(b). The court GRANTS Bountiful Baby's ex parte motion for a TRO.

Finally, the court may "in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm'" to the defendant. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (citation omitted). As such, the court declines to impose a bond due to the absence of proof of a likelihood of harm to Defendants.

## II. PLAINTIFF'S OTHER REQUESTS FOR RELIEF

In addition to the temporary restraining order, Plaintiff also moves the court for the following relief: (1) an order temporarily sealing the proceedings, (2) an order freezing Defendants' PayPal accounts and related assets, (3) an order permitting expedited discovery of Defendants' financial information, and (4) an order permitting Plaintiff to serve Defendants by email. For the following reasons, the court grants each of the requests for relief.

### A. *Motion to Seal*

Bountiful Baby seeks to temporarily seal these proceedings under the District of Utah's Civil Rule 5-2. *See* DUCivR 5-2(a) ("In extraordinary circumstances, a judge may order a case to be sealed . . . ."). Traditionally, court records are a matter of public record. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) ("Courts have long recognized a common-law right of access to

9

judicial records."). The District of Utah's Civil Rule 5-2(a) further reinforces that "[t]he records of the court are presumptively open to the public" and counsels that sealing documents filed with the court "is highly discouraged." Nevertheless, "the presumption in favor of access to judicial records may be overcome where countervailing interests heavily outweigh the public interests in access." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (citation omitted).

"The party seeking to overcome the presumption of public access to the document bears the burden of showing some significant interest that outweighs the presumption." *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (citation omitted). That burden requires "articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co.*, 698 F.3d at 1242 (citation omitted). In resolving whether to seal the proceedings, the court must "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Helm*, 656 F.3d at 1292).

A party can rarely meet the heavy burden of demonstrating that its interests outweigh the public interest in a transparent judiciary. But this case presents precisely the sort of factual scenario that merits temporary sealing. In cases where a plaintiff alleges a counterfeiter could dissipate its assets and disappear if it learns of the proceedings, plaintiffs can show a "real and substantial interest" in ensuring assets remain for a potential recovery. *Colony Ins. Co.*, 698 F.3d at 1242; *see also Deckers Outdoor Corp. v. P'ships & Unincorp. Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *1 (N.D. Ill. Oct. 31, 2013) (permitting plaintiff to file under seal "because its primary objective is to secure a pre-judgment restraint on any of Defendants' assets that might be within the Court's authority to freeze"); *Sony Comput. Ent. Am., Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 978 (N.D. Cal. 1999) (noting that the court "granted [plaintiff's] request for a

TRO and Order for Seizure and Impoundment of Counterfeit Goods and directed that all motions and papers be filed under seal"); *Lorillard Tobacco Co. v. Barah Deli & Grocery*, No. C-05-3125-JF, 2005 WL 2397516, at *1 (N.D. Cal. Sept. 28, 2005) (noting that the court "ordered that the case be sealed" where plaintiffs alleged defendants "are selling counterfeit Newport cigarettes bearing [plaintiff's] marks"); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283(AJN), 2012 WL 5265727, at *1 (S.D.N.Y. Oct. 24, 2012) (noting that the court "granted Plaintiff's request to file the Complaint under seal so that Plaintiff could obtain certain *ex parte* remedies . . . without providing the defendants, alleged to be counterfeiters, with an opportunity to destroy any infringing goods or abscond with any ill-gotten profits").

Here, Plaintiff alleges that Defendants operate websites that sell counterfeit products. Bountiful Baby contends that if Defendants learn of this proceeding, they may immediately dissipate their assets through electronic transfers to foreign jurisdictions. Such transfers would hamper the court's power to grant relief and frustrate the purpose of the copyright laws under which Bountiful Baby sued Defendants. Thus, Bountiful Baby requests that the court temporarily seal these proceedings until the TRO and asset freeze are in place.

Although there is a presumption in favor of allowing access to judicial records, Bountiful Baby sufficiently demonstrates that its interests in preserving its ability to obtain preliminary, and ultimately permanent, relief are real and substantial. Given the extraordinary circumstances of this case and the temporary nature of the requested seal, the court GRANTS Bountiful Baby's Ex Parte Motion for Leave to File Under Seal (ECF No. 2).

### B.  *Motion for Asset Freeze*

Bountiful Baby also seeks to temporarily freeze any assets in the PayPal accounts associated with Defendants, as well as any bank accounts in receipt of proceeds from the PayPal

accounts, to preserve its right to an accounting. "[A] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (citation omitted). "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-00521-DB, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

Bountiful Baby produced evidence that Defendants use PayPal accounts to process payments for consumer purchases of the products at issue. Bountiful Baby alleges that PayPal processes credit card or electronic transfer payments from consumers, which are directed to Defendants' PayPal accounts. PayPal, Plaintiff alleges, then forwards the payments to Defendants. Without an asset freeze, Bountiful Baby argues, Defendants will continue to engage in and profit from their allegedly counterfeit scheme. *See Klein*, 2008 WL 11340043, at *4 ("[T]he court is justified in freezing Defendants' assets not only to protect them for possible future attachment, but also to deprive Defendants of capital to continue their counterfeiting operations."). And Bountiful Baby maintains that Defendants, if given notice of this TRO, will move their financial assets outside of this court's jurisdiction where they can hide or dispose of them, thereby rendering an accounting meaningless. Because Bountiful Baby seeks Defendants' profits from their allegedly unlawful acts, Bountiful Baby urges the court to freeze the assets of the PayPal accounts associated with englandearthwards32@gmail.com, sdh15168294305@gmail.com, and

jonesjere1000@gmail.com, as well as any bank accounts that have received proceeds from those accounts.

The court finds that Bountiful Baby's allegation that Defendants will move their assets beyond this court's jurisdiction justifies the requested asset freeze. The court further finds that Federal Rules of Civil Procedures 65(d)(2)(C) grants the court authority to bind any participants in processing the allegedly counterfeit sales, including PayPal. *See* FED. R. CIV. P. 65(d)(2)(C) (noting that injunctions may bind "other persons who are in active concert or participation with [the party subject to the injunction]"). Thus, to preserve Bountiful Baby's right to an accounting and ensure the availability of permanent relief, the court GRANTS Bountiful Baby's motion for an asset freeze.

### C. Motion for Expedited Discovery

Bountiful Baby moves ex parte for expedited discovery of Defendants' financial information. Generally, a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." FED. R. CIV. P. 26(d)(1). But "the traditional sequence of discovery may . . . be altered by the court in the exercise of its broad discretion." *1524948 Alberta LTD. v. Doe*, No. 2:10-cv-900-TS, 2010 WL 3743907, at *1 (D. Utah Sept. 23, 2010). The party seeking expedited discovery "has the burden of showing good cause for the requested departure from usual discovery procedures." *Id.* (citation omitted). A party moving for expedited discovery may show good cause where "the party seeks a preliminary injunction, or where the moving party has asserted claims of infringement and unfair competition." *Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 1:10-cv-209, 2011 WL 13136539, at *1 (D. Utah Mar. 1, 2011) (citation omitted).

Bountiful Baby has established good cause to uncover financial information from Defendants. Bountiful Baby alleges that Defendants use PayPal to process payments for consumer purchases of the products at issue. Bountiful Baby avers that it does not know the identity or location of the banks or other financial institutions to which PayPal transfers funds resulting from Defendants' sales and, without expedited discovery, it will not know the persons or entities upon which to serve the temporary restraining order and asset freeze. Bountiful Baby argues that Defendants may then dissipate any available funds before the court grants relief. Because the court grants Bountiful Baby's requested asset freeze and finds good cause for Bountiful Baby's request for expedited discovery to effectuate that asset freeze, the court GRANTS Bountiful Baby's Ex Parte Motion for Expedited Discovery.

### D. *Motion for Service by Alternate Means*

Bountiful Baby also moves ex parte for an order authorizing service of process by email. As an initial matter, the court notes that it will only consider this motion as to the Chinese Defendants for whom Bountiful Baby indicated no alternate means for service of process. Regarding Jozzby and AIMARK, Plaintiff provided the address of each company's registered agent and should direct service of process to those respective addresses. For the other Defendants, which are based in China, the court first considers whether service of process by email complies with the Federal Rules of Civil Procedures, and then with constitutional due process requirements.

Federal Rules of Civil Procedure 4(h) states that absent a waiver or federal law to the contrary, a "foreign corporation, or a partnership or other unincorporated association" must be served if "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f)." Rule 4(f), in turn, permits service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
> (3) by other means not prohibited by international agreement, as the court orders.

Rule 4(f) does not create a hierarchy of preferred methods of service, and parties are not required to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3). *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Thus, the relevant inquiry for service under Rule 4(f)(3) is whether the requested method of service is prohibited by international agreement, including the Hague Convention. *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020), *cert. denied,* No. 20-1033, 2021 WL 2519105 (U.S. June 21, 2021).

Service by email is not prohibited by international agreements. In particular, the "Hague Convention does not expressly prohibit service by email." *Love-Less Ash Co., Inc. v. Asia Pac. Constr., LLC*, No. 2:18-cv-595-CW-DAO, 2021 WL 3679971, at *2 (D. Utah Aug. 19, 2021). And courts in this district and other jurisdictions have found that service by email complies with Rule 4(f)(3). *See, e.g.*, *Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 6364598, at *4-5 (D. Utah Oct. 29, 2020) (concluding that "email service is not prohibited by international agreement," even though China objected to service by postal channels under Article 10 of the Hague Convention); *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 n.2 (S.D.N.Y. 2018) (same); *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.* No. 5:20-cv-04773, 2020 WL 5199434, at *14 (N.D. Cal. Aug. 17, 2020) ("[S]ervice by email on defendants in China is not barred by any international agreement.").

15

In addition to complying with Rule 4(f), the alternate means of service authorized by the court must satisfy constitutional norms of due process. Due process requires service of process that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts have previously found that service of process by email meets constitutional due process requirements. *Rio Props.*, 284 F.3d at 1017 (concluding "[w]ithout hesitation" that service of process by email met constitutional due process requirements); *Neck Hammock, Inc.*, 2020 WL 6364598, at *5 (concluding that "email service can comport with constitutional notions of due process").

In this case, email service clearly comports with constitutional notions of due process. Most importantly, it is likely the best way to effectively notify Defendants of this case. Defendants appear to primarily communicate with customers, domain registrars, and web hosts through electronic communication. And exhibits to Plaintiff's motions show that the emails provided are the primary email addresses listed on Defendants' websites. Thus service by email is reasonably calculated to promptly notify Defendants of the pending action. *See ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-cv-05149, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (holding that service by email to "the contact email address that is listed on [the defendant's] website" was "not only reasonably calculated to provide actual notice . . . but the method most likely to apprise [defendants] of this action"); *Cisco Sys., Inc.*, 2020 WL 5199434, at *15 (finding service on Chinese defendants by email proper when the defendants "operate Internet-based businesses trafficking in counterfeit . . . products, . . . provide email addresses for communication, and . . . ultimately negotiated and consummated transactions for sale of the infringing products . . . via email"). Moreover, because Defendants are e-commerce and foreign-based companies, service of

16

process by email is likely "the only means of effecting service of process." *Rio Props.*, 284 F.3d at 1018.

Finally, although service of process by email is appropriate and comports with due process in this case, an additional safeguard should be put in place to ensure due process. Specifically, the court ORDERS Bountiful Baby to provide the court with any indication that emails sent to Defendants are returned or otherwise not received.

## ORDER

Based on the foregoing, the court ORDERS the following:

(1) The court GRANTS Plaintiff's Ex Parte Motion for Leave to File Under Seal (ECF No. 2). The clerk shall maintain these proceedings under seal pending further order of the court. Plaintiff shall promptly move the court to unseal these proceedings once any orders related to its motions for a temporary restraining order and asset freeze are served on the relevant parties and the temporary restraining order and asset freeze are in place.

(2) The court GRANTS Plaintiff's Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 4). Plaintiff is permitted to seek discovery from PayPal regarding financial accounts relevant to the instant dispute on an expedited basis. Once the asset freeze and financial discovery ordered herein are completed, Plaintiff may provide service of process to the unknown Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3) at the following email addresses previously identified in this Order:

- englandearthwards32@gmail.com
- cs@rebornbabymart.com
- service@rebornbox.com
- service@rebornbabystores.com

- services@lovereborndolls.com
- sdh15168294305@gmail.com
- jonesjere1000@gmail.com
- service@reborndollsshop.com

Plaintiff must provide the court with any indication that it receives from its email provider if the emails sent to Defendants are returned or otherwise not received. Plaintiff must serve Defendants Jozzby and AIMARK by conventional means. The court grants no permission for service of process by email to these two defendants.

(4) The court GRANTS Plaintiff's Ex Parte Motion for a Temporary Restraining Order and Asset Freeze (ECF No. 3). Refer to the docket for a copy of the Temporary Restraining Order.

DATED November 22, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge