IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DP CREATIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>REBORN BABY MART, *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>Case No. 2:21-cv-00574-JNP<br><br>District Judge Jill N. Parrish |

This case comes before the court on Plaintiff DP Creations, LLC d/b/a Bountiful Baby's ("Bountiful Baby" or "Plaintiff") motion for default judgment and permanent injunction. ECF No. 53. Having considered the briefing, the court GRANTS the motion for the following reasons.

**FACTUAL BACKGROUND**

Bountiful Baby is a Utah limited liability company with its principal place of business at 2140 South 3600 West, West Valley City, Utah. Bountiful Baby does business in the District of Utah, has numerous employees and customers in the District of Utah, and has allegedly suffered injury in the District of Utah.

This motion addresses seven of the named defendants: (1) Reborn Baby Mart, (2) Reborn Box, (3) Reborn Baby Stores, (4) Love Reborn Dolls, (5) Reborn Dolls Shop, (6) Nine9Light Company, and (7) LTD Information Technology Co., Ltd. (collectively, "Defendants").[1]

---

[1] Although named in this lawsuit, the clerk of court has not entered a default certificate against Jozzby Group, Inc. and AIMARK LTD. Accordingly, this motion does not pertain to those two defendants.

Defendants (1) through (5) operate websites that sold counterfeit products. Defendant Nine9Light Company processed payments for counterfeit products sold by Defendants (1) through (4). Defendant LTD processed payments for Defendant (5). Although the exact relationship between the entities is unknown, Bountiful Baby contends that Nine9Light and LTD serve as alter egos of the website defendants.

Bountiful Baby specializes in selling kits and supplies for making "reborn dolls." Reborn dolls are intended to be indistinguishable from a real baby, and Bountiful Baby's dolls are particularly known for their uncanny realism. Bountiful Baby alleges that Defendants sell counterfeit Bountiful Baby products on their websites and mislead consumers by using Bountiful Baby's copyrighted images and trademarks. Bountiful Baby alleges copyright infringement, unfair competition, and common law trademark infringement.

On November 22, 2021, the court entered a Temporary Restraining Order and Asset Freeze ("TRO") in this matter, which went into effect the same day at 9:00 a.m. and was set to expire fourteen days later, on December 6, 2021. ECF No. 7. On December 2, 2021, the court issued a supplemental TRO, freezing assets in bank accounts associated with Defendants' PayPal accounts. ECF No. 24. On December 6, 2021, the court held a hearing on the two TROs. All parties received notice of the hearing. Only counsel for Bountiful Baby appeared. The court elected to extend the TROs for ten days, through December 16, 2021. ECF No. 25. On December 15, 2021, the court held a hearing to determine whether it should enter a preliminary injunction upon expiration of the extended TRO. Again, all parties received notice, but only counsel for Bountiful Baby was in attendance. On the same day, the court converted the TRO into a preliminary injunction. ECF No. 40.

On January 24, 2022, the clerk of court entered a default certificate as to Defendants, as requested by Bountiful Baby. ECF No. 44. On February 3, 2022, Bountiful Baby moved for entry of default judgment against Defendants, a preliminary injunction against Defendants' infringement, and attorney's fees and costs.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment against a party who "has failed to plead or otherwise defend" against claims for affirmative relief. First, the clerk of court "must enter the party's default" under Rule 55(a). Second, the non-defaulting party must move the court (or, in certain circumstances, the clerk) for entry of default judgment under Rule 55(b).

"[T]he entry of a default judgment is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). Default judgments are generally disfavored as "[t]he preferred disposition of any case is upon the merits." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). But "a workable system of justice requires that litigants not be free to appear at their pleasure." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983). The court must hold parties "to a reasonably high standard of diligence in observing the courts' rules of procedure[,]" and "[t]he threat of judgment by default serves as an incentive to meet this standard." *Id.* at 1444-45.

## ANALYSIS

The court first addresses the entry of default judgment, before turning to Bountiful Baby's request for a permanent injunction and attorneys' fees and costs.

I. **DEFAULT JUDGMENT**

In order to grant default judgment, the court must first assure itself of both subject matter jurisdiction and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). It must then determine whether the plaintiff's complaint contains sufficient factual matter, accepted as true, to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("There must be a sufficient basis in the pleadings for the judgment entered." (citation omitted)). The court may consider declarations and other exhibits when evaluating a plaintiff's claims. *See, e.g.*, *Major Bob Music v. S. Shore Sports Bar & Grill, Inc.*, No. 2:08-cv-689, 2010 WL 2653330, at *1 (D. Utah June 30, 2010).

 A. *Jurisdiction*

  i. **Subject Matter Jurisdiction**

Four of the counts in Bountiful Baby's complaint arise under federal law. ECF No. 1 ¶¶ 59-94 (counts I-IV). Accordingly, the court has subject matter jurisdiction over those claims under federal question jurisdiction. *See* 28 U.S.C. § 1331. Count V, Bountiful Baby's common law trademark infringement claim, is intimately related to the federal trademark infringement claims. Therefore, the court may exercise supplemental jurisdiction over count V under 28 U.S.C. § 1367(a).

  ii. **Personal Jurisdiction**

To establish minimum contacts with the forum state, the plaintiff must demonstrate that the defendant "purposefully directed its activities at residents of the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citation omitted). The court must additionally determine "whether a nexus exists between Defendant's forum-related contacts and

the Plaintiff's cause of action." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

To establish purposeful availment in the internet context, the plaintiff must show that the defendant either "intentionally targeted Utah users or that Utah users actually interacted with [the] website." *iAccess, Inc. v. WEBcards Techs., Inc.*, 182 F. Supp. 2d 1183, 1187 (D. Utah 2002). Here, Bountiful Baby has submitted evidence that PayPal accounts associated with Defendants sold 286 products to Utah customers worth $22,580.42.[2] *See Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1227 (D. Utah 2016) (finding purposeful availment where a defendant "filled these orders and shipped the allegedly infringing product to the Utah customers' addresses" thus forming "ongoing relationships . . . with Utah forum residents regarding the allegedly infringing products"); *The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 6364598, at *6 (D. Utah Oct. 29, 2020) (finding personal jurisdiction where a defendant sold as few as "3 allegedly infringing products to Utah residents"). Accordingly, consumers in Utah had substantial interactions with Defendants online. Moreover, those interactions—the sale of counterfeit products—are directly related to Bountiful Baby's causes of action, which include

---

[2] "[P]ersonal jurisdiction requirements 'must be met as to each defendant.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). The PayPal accounts that contain transaction information for sales to Utah residents pertain to all seven defendants. The PayPal account ending in 8316, owned by Reborn Baby Mart, sold $227.07 worth of products in three transactions with Utah consumers. *See* ECF No. 31 ¶ 3; ECF No. 54 ¶ 3. The PayPal account ending in 6988, owned by Reborn Baby Mart, Reborn Box, Reborn Baby Stores, Love Reborn Dolls, Nine9Light Company, Jozzby Group, Inc., and AIMARK Ltd., sold $935.63 worth of products in eleven transactions with Utah consumers. *See* ECF No. 31 ¶ 4; ECF No. 54 ¶ 3. The PayPal account ending in 8136, owned by Ltd. Information Technology Co., Ltd., and AIMARK Ltd., sold $21,417.72 worth of products in 272 transactions with Utah consumers. *See* ECF No. 31 ¶ 5; ECF No. 54 ¶ 3. Although Reborn Dolls Shop does not appear as an owner of any of the referenced PayPal accounts, Bountiful Baby submits that LTD Information Co., Ltd. received payments in the account ending in 8136 on behalf of Reborn Dolls Shop.

copyright and trademark infringement. Accordingly, the court has personal jurisdiction over each defendant.

### B. *Substantive Claims*

#### i. **Count I**

Count I asserts copyright infringement of Bountiful Baby's infant photographs. "To state a claim for copyright infringement, a plaintiff must show '(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.'" *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) (citation omitted). Bountiful Baby easily establishes the first element. The company owns Registration No. VA0002231276, which includes the three photographs highlighted in Bountiful Baby's motion. ECF No. 1 ¶ 18 & Ex. NN.

The Tenth Circuit has outlined a complex "abstraction-filtration-comparison" test to determine whether a defendant's product is substantially similar to the protectable elements in a plaintiff's product. *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). But where Defendants' product is *identical* to Bountiful Baby's product, the court need not engage in such analysis. Simply viewing the original and copied images makes clear that Defendants have copied every single constituent element of Bountiful Baby's copyrighted photographs. Accordingly, default judgment is appropriate on count I.

#### ii. **Counts II and III**

Counts II and III allege copyright infringement for the unlawful use of the Darren and Skya copyrighted sculptures. Again, Bountiful Baby easily establishes ownership of a valid copyright for both sculptures. Bountiful Baby owns Registration Nos. VA0002255282 (Darren) and VA0002255449 (Skya). ECF No. 1 ¶¶ 34, 45. And Bountiful Baby has submitted numerous screenshots demonstrating that Defendants reproduced dolls using the copyrighted Darren and

Skya sculptures. ECF No. 1, Exs. T-CC. After viewing the screenshots, the court determines that Defendants' products are "so similar to [Bountiful Baby's] work that an ordinary reasonable person would conclude that [Defendants] unlawfully appropriated [Bountiful Baby's] protectible expression by taking material of substance and value." *See Country Kids*, 77 F.3d at 1288 (citation omitted). Accordingly, there is a sufficient basis for default judgment on counts II and III.

      iii.    **Counts IV and V**

Count IV alleges that Defendants' use of Bountiful Baby's trademarks amounts to unfair competition in violation of the Lanham Act. A trademark includes "any word [or] name . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others." 15 U.S.C. § 1127. Here, Bountiful Baby asserts rights in the trademarks "Darren" and "Skya," which Bountiful Baby uses in connection with the sale of its "Darren" and "Skya" branded dolls.

The Lanham Act provides trademark protection under two separate sections. First, under § 2 of the Act, a party can register its trademark with the United States Patent and Trademark Office, which creates a presumption that its mark is valid. *See* 15 U.S.C. § 1052; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). Here, Bountiful Baby submits no evidence that it registered "Darren" or "Skya." But a trademark that is unregistered may still be protectable under § 43(a) of the Lanham Act. *Id.* To establish a claim for protection under § 43(a), Bountiful Baby must prove: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse customers." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052 (10th Cir. 2021) (citation omitted).

7

The Tenth Circuit has identified five categories of terms to assist district courts in assessing the protectability of a mark: generic, descriptive, suggestive, arbitrary, and fanciful. The five categories have been described as follows:

> A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (citation and alterations omitted). The court holds that "Darren" and "Skya" are at least arbitrary—if not fanciful—as they apply to the sculptures in question. Neither name describes the sculptures' "features, qualities, or ingredients" nor do the names suggest the nature of the goods. Rather, there is no intrinsic connection between the marks "Darren" and "Skya" and the sculptures. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir. 1999) ("Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used."); *see also McKee Baking Co. v. Interstate Brands Corp.*, 738 F. Supp. 1272, 1274 (E.D. Mo. 1990) ("The Court finds that LITTLE DEBBIE is an arbitrary or fanciful trademark because the name is completely unrelated to the product it represents."). And suggestive, arbitrary, or fanciful marks "are inherently distinctive, and thus receive the greatest protection against infringement." *Donchez*, 392 F.3d at 1216 (citation omitted). Accordingly, Bountiful Baby has established a protectable interest in the marks.

Bountiful Baby readily establishes that Defendants used the marks in commerce. The company provides numerous screenshots where Defendants refer to "Darren" or "Skya" in marketing a line of dolls on the internet. *See, e.g.*, ECF No. 1 ¶¶ 36, 38, 40, 42, 44, 47, 49, 51, 53,

8

55. And "the Internet is generally an instrumentality of interstate commerce." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008).

Finally, Bountiful Baby must establish a likelihood of confusion between the subject marks. The Tenth Circuit utilizes the following six-factor test for determining whether a likelihood of confusion exists: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). "No one factor is dispositive." *Utah Lighthouse*, 527 F.3d at 1055.

Defendants and Bountiful Baby use identical word marks. *See Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) (noting that the similarity of the marks is the "first and most important factor" (citation omitted)). And both parties use the identical marks to sell essentially identical products using an identical manner of marketing. Moreover, Defendants appear to have adopted the marks "Darren" and "Skya" to intentionally divert customers seeking Bountiful Baby dolls to their own websites. *See Sally Beauty*, 304 F.3d at 973 (evaluating intent by considering "whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff"). Therefore, factors (1), (2), and (4) weigh strongly in favor of Bountiful Baby.

The strength of the mark weighs somewhat in favor of Bountiful Baby. To assess the relative strength of a mark, the court must consider two aspects of strength: (1) "conceptual strength, which refers to the placement of the mark along distinctiveness spectrum," discussed above; and (2) "commercial strength, which refers to the marketplace recognition value of the mark." *Utah Lighthouse*, 527 F.3d at 1056. As discussed above, Bountiful Baby has demonstrated the conceptual strength of the marks by showing its arbitrariness. But Bountiful Baby provides

9

minimal evidence of the marketplace recognition of the marks. While Bountiful Baby repeatedly discusses how the market places high value on its reborn dolls generally, the company fails to demonstrate that consumers recognize the names "Darren" and "Skya" as referring to Bountiful Baby dolls in particular. *See Water Pik, Inc. v. Med-Sys., Inc.*, 848 F. Supp. 2d 1262, 1278 (D. Colo. 2012) ("[A] court looks at the marketplace to determine if a '*substantial number* of present or prospective customers understand the [mark,] when used in connection with a business, to refer to a particular person or business enterprise.'" (citation omitted)). Accordingly, this factor weighs weakly in favor of Bountiful Baby.

Bountiful Baby has provided evidence that consumers were confused by other counterfeit dolls that carry different names. *See, e.g.*, ECF No. 3-1 ¶ 9 (complaining of confusion regarding "Saskia" on reborndollshop.com). But Bountiful Baby has provided no evidence specifically demonstrating that Defendants' use of the particular marks in question caused consumer confusion. Nevertheless, evidence of actual confusion is "not necessary to prevail on a trademark infringement claim." *Sally Beauty*, 304 F.3d at 974. Similarly, the degree of care likely to be exercised by purchasers is neutral—the counterfeit dolls, at about $100 each, are neither particularly expensive nor particularly cheap products. *See id.* at 975 ("[I]tems purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully.").

Considering three strong factors in favor of Bountiful Baby, along with one weak factor and two neutral factors, the court finds that default judgment on Bountiful Baby's Lanham Act claim is appropriate.

And the same conclusion applies to Bountiful Baby's common law trademark claim (count V). Indeed, the very "same elements [as federal trademark infringement] must be shown to

establish a claim for common law trademark infringement." *Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1239 n.60 (D. Utah 2020) (citation omitted). Accordingly, Bountiful Baby has established the elements of common law trademark infringement as well.

### C.     *Damages*

Bountiful Baby seeks an award of statutory damages for Defendants' copyright infringement.[3] Under 17 U.S.C. § 504(c)(1), a "copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." Indeed, "[s]tatutory damages are particularly appropriate in a case, such as this one, in which [the] defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

### i.     **Number of "Works"**

The Copyright Act allows only one award of statutory damages against each defendant for each "work" infringed. 17 U.S.C. § 504(c)(1). Accordingly, statutory damages for copyright infringement are calculated according to the number of works infringed, not the number of times a defendant infringed on a particular work. *See Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("A single infringer of a single work is liable for a single amount . . . *no matter how many acts of infringement are involved in the action* and regardless of whether the acts were separate, isolated or occurred in a related series." (citation omitted)). Therefore, the court must

---

[3] Bountiful Baby does not seek an award of damages for Defendants' trademark infringement (counts IV-V).

determine the number of "works" at issue. Bountiful Baby easily establishes two "works." First, count II establishes that each Defendant infringed one copyrighted work, "Darren." And, second, count III establishes that each Defendant infringed an additional copyrighted work, "Skya." But count I presents a trickier scenario—three separate photographs, all covered by a single copyright. Accordingly, the question for the court is whether these three photographs qualify as three separate "works" for purposes of calculating statutory damages.

The Copyright Act states that "all the parts of a compilation . . . constitute one work." *Id.* It defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Appellate courts are split on how to define "one work" and a "compilation." Some circuits hold that distinct works exist where each work is able to "live [its] own copyright life." *Walt Disney*, 897 F.2d at 569 (citation omitted). In other words, those courts find independent "works" where "each expression . . . has an independent economic value and is, in itself, viable." *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116-17 (1st Cir. 1993). On the other hand, some circuits hew closely to the text of § 501(c)(1) to find that "all parts of a compilation must be treated as one work for the purpose of calculating statutory damages" and there is "no exception for a part of a compilation that has independent economic value." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 142 (2d Cir. 2010).

But the court need not wade into this debate. Under either test, the photographs in count I constitute three separate works. Under the independent economic value test, each photograph has independent economic value because it represents an independent artistic effort that captures a unique marketing image. Under the more restrictive test, the three photographs cannot be

considered a "compilation." In *Bryant*, the Second Circuit directed the inquiry to the copyright holder's conduct in issuing the works. *Id.*; *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016) ("In other words, our focus is on whether the plaintiff—the copyright holder—issued its works separately, or together as a unit." (alteration and citation omitted)). In other words, because the copyright holders in *Bryant* issued their works as an album—i.e., a compilation—the court found that the songs contained in the album constituted one single "work." In contrast, in a different case the Second Circuit awarded separate statutory damages awards for songs that the plaintiffs issued as singles, even though those songs were available on an album. *EMI Christian Music*, 844 F.3d at 101. Here, there is no evidence that Bountiful Baby issued a compilation, or "album," of photographs. In other words, the photographs have not been arranged "in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101; *see also Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1370-71 (D. Kan. 2018) ("Authorship of work involves creation, not mere accumulation." (citation omitted)). Rather, while all of the photographs pertain to the same baby, each photograph represents a separate issuance from the photographer, more closely resembling the singles in *EMI Christian* than the album in *Bryant*.

And the fact that Bountiful Baby registered the relevant photos in a group registration does not alter the court's conclusion. *See* ECF No. 1, at Ex. NN. Group registration is not equivalent to compilation formation. *Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 710 (D. Md. 2001) ("[M]ultiple copyrights may be registered on the same form and, so, the registration is not dispositive."). And the U.S. Copyright Office has acknowledged that "[c]opyright owners who use a group registration option may be entitled to claim a separate award of statutory damages for each work . . . that is covered by the registration." *Energy Intel.*, 300 F. Supp. 3d at 1370-71 (quoting

13

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 1104.5 (3d ed. rev. 2017)). Accordingly, under either definition, the three photographs constitute three separate "works" for purposes of statutory damages.

In sum, Bountiful Baby has established five separate "works" for purposes of statutory damages.

        ii.        **Amount of Statutory Damages**

The second issue for the court is the amount of statutory damages. Ordinarily, statutory damages may be awarded "in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c)(1). But if a copyright owner proves that the infringement "was committed willfully," the court may award statutory damages in an amount not to exceed $150,000. *See* 17 U.S.C. § 504(c)(2). "In order to show that infringement was willful, the plaintiff must prove that the defendant either knew that his or her conduct constituted copyright infringement or recklessly disregarded the possibility that his or her conduct constituted copyright infringement." *Nunes v. Rushton*, No. 2:14-cv-627, 2018 WL 2214593, at *1 (D. Utah May 14, 2018) (collecting circuit cases and a treatise).

Defendants' behavior indicates that they willfully infringed Bountiful Baby's rights. First, Defendants used exact copies of the photographs and sculptures at issues—Defendants did not mistakenly copy Bountiful Baby's intellectual property. Rather, the evidence demonstrates that they misappropriated the images and sculpture design directly from Bountiful Baby's website with the intent to deceive customers into purchasing their products. Moreover, Defendants acted brazenly. When one counterfeit website was disabled, they opened a new counterfeit website to continue their infringing conduct. Accordingly, the court may award statutory damages up to $150,000 per work.

The Tenth Circuit has not enumerated which factors the court should consider in crafting a statutory damages amount. However, many other courts have addressed the topic. And "the most common list of factors recited" include "the relationship between the statutory damages sought and any actual damages or profits, whether the infringement was willful or innocent, the need for deterrence, defendant's past infringement record, defendant's cooperation after the matter was brought to its attention, and the scope of the infringement." 6 PATRY ON COPYRIGHT § 22:174.

The first factor—the relationship between the statutory damages sought and any actual profit or damages—is inconclusive. Bountiful Baby recognizes that the Defendants' total profits from their counterfeit product listing are unknown. ECF No. 53 at 31. Bountiful Baby conservatively estimates that it loses up to $10,000 per day to counterfeiters. ECF No. 49 ¶ 7. And Bountiful Baby further points out that Defendants have wrongfully profited from the millions of dollars and significant time that Bountiful Baby has invested in perfecting its photography and three-dimensional infant modeling. But Bountiful Baby does not cite specific dollar amounts— either of Defendants' profits or Plaintiff's losses—for the court to compare to the statutory damages sought. However, that is neither surprising nor dispositive since much of the data is solely within the absent Defendants' control.

Moreover, the remaining factors weigh heavily in favor of a substantial award of statutory damages. As discussed above, the infringement was willful. Defendants have a record of moving to new websites to market their counterfeit products whenever their websites are disabled. And a strong deterrent is necessary. The defendants in a recent case involving Chinese defendants selling counterfeit reborn dolls—indeed, perhaps the same entities behind the websites at issue in this

case[4]—paid $140,000 to resolve the litigation, but that amount had no deterrent effect on the present Defendants. While it is uncertain whether the defendants in the first reborn doll matter are related to the present Defendants, the present Defendants plainly used an identical playbook and the settlement amount in the previous case served as no deterrent here. Moreover, Defendants have displayed absolutely no interest in cooperation in the matter. Indeed, they have not even made an appearance before this court. Finally, the scope of the infringement is substantial. Bountiful Baby has submitted evidence of hundreds of counterfeit product listings across five different websites. ECF No. 1 ¶¶ 33-45, Exs. T-CC.

Bountiful Baby invested years and millions of dollars in building its unique business. Defendants deliberately used Bountiful Baby's hard-earned intellectual property to make a quick profit on the internet. And Defendants did so repeatedly and without reservation. Accordingly, the court finds that an award of $150,000 in statutory damages per work is warranted in this case to deter future infringing conduct. Because each website Defendant infringed five of Bountiful Baby's works, Bountiful Baby is entitled to $750,000 in statutory damages from each website Defendant.[5]

---

[4] There is some evidence to suggest that the present Defendants are connected to the defendants in prior litigation regarding reborn dolls in front of this court. Specifically, Bountiful Baby claims that Reborn Box, Reborn Baby Mart, Reborn Baby Stores, and Love Reborn Dolls all infringe on Bountiful Baby's work in the exact same manner—using similar product names and product details—as the defendants in the prior litigation. ECF No. 1 ¶ 26.

[5] Because Nine9Light Co. received payments on behalf of RebornBox.com, RebornBabyMart.com, RebornBabyStores.com, and LoveRebornDolls.com, Nine9Light Co. is jointly and severally liable for the $750,000 owed by each of those Defendants. Similarly, because LTD Information Co., Ltd. received payments on behalf of RebornDollsShop.com, LTD Information Co., Ltd. is jointly and severally liable for the $750,000 owed by RebornDollsShop.com.

## II. PERMANENT INJUNCTION

Bountiful Baby also seeks a permanent injunction preventing Defendants from any future infringement. Section 502 of the Copyright Act provides that the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, the plaintiff must demonstrate:

> (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (citation omitted). "A copyright holder that establishes past infringement and a substantial likelihood of infringement in the future is normally entitled to a permanent injunction against the infringer pursuant to § 502(a)." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996).

Here, Bountiful Baby has demonstrated Defendants' liability, thus establishing actual success on the merits. As to the second prong, "irreparable harm findings are based on such factors as the difficulty in calculating the damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004). Because Defendants control the information about the exact quantity of sales of counterfeited products, it is difficult to calculate the exact number of sales Bountiful Baby has lost. *Sw. Stainless*, 582 F.3d at 1191 ("A district court may find irreparable harm based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer." (citation omitted)). In addition, it is impossible to calculate the value of the loss of customers and goodwill. *See id.* at 1192 (affirming a finding of irreparable harm "*[b]ecause* it is so difficult to prove the value of goodwill"). Moreover, Defendants have demonstrated a pattern of creating new websites to facilitate

17

infringement, thus raising a likelihood of continued infringement that monetary damages cannot remedy. Therefore, Bountiful Baby has established irreparable harm absent an injunction.

As to the third prong, there is no hardship to Defendants because a permanent injunction will merely prevent Defendants from engaging in further unlawful activity. *See Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) ("Producing and selling counterfeit goods is illegal. There can be no cognizable harm to the Defendants by the issuance of an order requiring them not to break the law."). Similarly, entering a permanent injunction will not disserve the public interest. To the contrary, it will protect copyrighted material and encourage compliance with the Copyright Act. *See Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993) ("In copyright cases . . . this factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections."), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

Accordingly, the court GRANTS a permanent injunction. The court shall enter an accompanying permanent injunction on the docket.

### III.  ATTORNEYS' FEES AND COSTS

Bountiful Baby seeks to recover $69,965.50 in attorneys' fees and $1,785.45 in costs associated with the present litigation. In support of this request, Bountiful Baby's counsel submitted a declaration with a spreadsheet of fees and costs attached. The spreadsheet outlines the billing rates for individuals who worked on this case, as well as brief descriptions of the work performed.

The Copyright Act expressly permits the court to award the prevailing party its "full costs," including "reasonable attorney's fees." 17 U.S.C. § 505. "Under the Copyright Act, an award of

fees is appropriate to promote the goal of deterrence where the evidence supports a finding of willfulness." *Tu v. TAD Sys. Tech. Inc.*, No. 08-cv-3822, 2009 WL 2905780, at *8 (E.D.N.Y. Sept. 10, 2009). As established above, the court finds that Defendants acted willfully in infringing Bountiful Baby's copyright. Accordingly, to further the goal of deterrence, the court holds that Bountiful Baby is entitled to $71,750.95 in reasonable attorneys' fees and costs under the Copyright Act.[6]

## CONCLUSION AND ORDER

The court orders as follows:

(1) The court enters default judgment against defendants Reborn Baby Mart; Reborn Box; Reborn Baby Stores; Love Reborn Dolls; Reborn Dolls Shop; Nine9Light Company; and Ltd. Information Technology Co., Ltd and awards damages in the following amount: $750,000 in statutory damages against each website Defendant. The court will enter a separate judgment on the docket.

(2) The court grants Bountiful Baby's motion for a permanent injunction. The court shall file the accompanying permanent injunction on the docket.

(3) The court grants Bountiful Baby's motion for attorneys' fees and costs in the amount of $71,750.95.

---

[6] Because the court finds the fees and costs reasonable under the Copyright Act, it need not address an award of fees and costs under the Lanham Act.

DATED August 3, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge